UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| WEIL, GOTSHAL & MANGES LLP | |
| Petitioner, | |
| v. | No. 20-mc-00736 |
| DOUGLAS S. CHABOT and COREY M. DAYTON, | **ORAL ARGUMENT REQUESTED** |
| Respondents. | |

## MEMORANDUM OF LAW IN SUPPORT OF PETITIONER
## WEIL, GOTSHAL & MANGES LLP'S MOTION TO QUASH NON-PARTY SUBPOENA

WEIL GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Tel: (212) 310-8000
Fax: (212) 310-8007

*Attorneys for Petitioner Weil, Gotshal & Manges LLP*

December 10, 2020

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ..................................................................................1

FACTUAL BACKGROUND......................................................................................4

    A.    The Underlying Action ..........................................................................4

    B.    Document Discovery ..............................................................................6

    C.    The First Weil Subpoena ......................................................................6

    D.    Plaintiffs' Motion to Compel Defendants' Communications with Weil .................8

    E.    The Parties Proceed to the Deposition Phase of the Case....................................10

    F.    The Second Weil Subpoena..................................................................12

ARGUMENT ...........................................................................................................14

    I.    THE COURT SHOULD QUASH THE SUBPOENA ...............................15

    A.    Plaintiffs Have No Need for the Documents Called for by the Subpoena.............15

    B.    The Subpoena Needlessly Subjects a Non-Party to Undue Burden .....................20

    II.    THE COURT SHOULD AWARD REASONABLE COSTS AND FEES................22

CONCLUSION.........................................................................................................23

## **TABLE OF AUTHORITIES**

**Cases**                                                                                                           **Page(s)**

*Chabot v. Walgreens Boots All., Inc.*,
   2020 WL 3410638 (M.D. Pa. June 11, 2020) ........................................................................9

*In re Circle K Corp.*,
   1996 WL 529399 (Bankr. S.D.N.Y. May 30, 1996), *aff'd,* 1997 WL 31197
   (S.D.N.Y. Jan. 28, 1997)........................................................................................................21

*Citizens Union v. Attorney Gen. of N.Y.*,
   269 F. Supp. 3d 124 (S.D.N.Y. 2017)....................................................................................22

*City of Edinburg Council v. Pfizer, Inc.*,
   754 F.3d 159 (3d Cir. 2014)...................................................................................................16

*Cohen v. City of New York*,
   2010 WL 1837782 (S.D.N.Y. May 6, 2010) ...................................................................14, 15

*Concord Boat Corp. v. Brunswick Corp.*,
   169 F.R.D. 44 (S.D.N.Y. 1996) .............................................................................................15

*Elcommerce.com, Inc. v. SAP AG*,
   2010 WL 3421101 (E.D. Pa. Aug. 27, 2010) ........................................................................17

*In re Friedman*,
   350 F.3d 65 (2d Cir. 2003).....................................................................................................15

*Giuffre v. Maxwell*,
   221 F. Supp. 3d 472 (S.D.N.Y. 2016)....................................................................................15

*Homeward Residential, Inc. v. Sand Canyon Corp.*,
   2017 WL 4676806 (S.D.N.Y. Oct. 17, 2017).........................................................................15

*In re Law Firms of McCourts & McGrigor Donald*,
   2001 WL 345233 (S.D.N.Y. Apr. 9, 2001)............................................................................22

*In re Loeb & Loeb*,
   2019 WL 2428704 (S.D.N.Y. June 11, 2019) .......................................................................22

*Manolis v. Brecher*,
   2013 WL 4044808 (S.D.N.Y. Aug. 9, 2013) ..........................................................................4

*Morelli v. Alters*,
   2020 WL 6508858 (S.D.N.Y. Nov. 5, 2020)....................................................................20, 22

*Omnicare, Inc. v. Laborers Dist. Council Constr. Indus. Pension Fund*,
    575 U.S. 175 (2015)................................................................................16

*Rhone-Poulenc Rorer Inc. v. Home Indem. Co.*,
    32 F.3d 851 (3d Cir. 1994).....................................................................16

*Sage Realty Corp. v. Proskauer Rose Goetz & Mendelson, LLP*,
    91 N.Y.2d 30 (N.Y. 1997) ....................................................................18

*Saint-Jean v. Emigrant Mortg. Co.*,
    2015 WL 13735434 (E.D.N.Y. Oct. 7, 2015).........................................20, 21, 23

*Sporck v. Peil*,
    759 F.2d 312 (3d Cir. 1985)...................................................................18

## Statutes & Rules

Fed R. Civ. P. 26 ........................................................................................15, 16, 17

Fed. R. Civ. P. 30 .......................................................................................11, 14

Fed. R. Civ. P. 45 ...................................................................................1, 4, 14, 15,  20, 21, 22

## PRELIMINARY STATEMENT

Petitioner Weil, Gotshal & Manges LLP ("Weil") moves to quash a subpoena (the "Subpoena") served by Respondents Douglas S. Chabot and Corey M. Dayton ("Plaintiffs") in the action captioned *Chabot et al. v. Walgreens Boots Alliance, Inc. et al.*, No. 18-cv-02118-JEJ-KM, currently pending in the United States District Court for the Middle District of Pennsylvania. The Subpoena arrived at the conclusion of a massive 18-month document discovery process and on the eve of depositions. It directly targets privileged documents located in internal law firm files, that were never seen by the defendants in the underlying securities action, and that therefore are irrelevant. What is more, the Subpoena is staggering in scope, requiring a review of more than 100,000 documents, most of which will be privileged and thus have to be included on a privilege log. This will take months to complete and upend the Court-ordered case schedule.[1] The Subpoena should be quashed.

The underlying action involves federal securities claims brought by shareholders of Rite Aid Corporation ("RAD") against Walgreens Boots Alliance ("WBA") and two of its senior officers (the "Defendants"). Plaintiffs allege that the Defendants made false and misleading statements concerning the status of the Federal Trade Commission ("FTC")'s review of WBA's proposed acquisition of RAD. Plaintiffs' claims turn in part on whether the WBA executives honestly believed, and had a reasonable basis for, the opinions they expressed regarding the proposed transaction.

Accordingly, the primary focus of discovery over the past 18 months has been what the WBA executives knew about the FTC process at the time they expressed their opinions—

---

[1] Defendants are apprising Judge Jones of this Motion by letter to the Court. Defendants would consent to the transfer of this motion to the issuing court pursuant to Fed. R. Civ. P 45(f) if the Court deems such transfer appropriate and warranted.

information which, as Plaintiffs have known since the outset of the litigation, came in part from WBA's antitrust counsel, Weil.  Indeed, last December, recognizing the critical import of Weil's communications with WBA concerning the status of the FTC process, Plaintiffs successfully moved to compel WBA (and only WBA) to produce communications between it and Weil, which Defendants had withheld on the basis of attorney-client privilege. Plaintiffs argued that WBA had placed its knowledge of the FTC review at issue and thus waived the attorney-client privilege within this limited scope.  The Court agreed and ruled in June 2020.  As a result, *WBA has already produced its formerly privileged communications with Weil regarding the FTC review process*. This includes all of Weil's communications with WBA executives concerning the FTC's feedback as well as Weil's recommendations about how to address the FTC's concerns.

This privilege order demanded by Plaintiffs thus established the ground rules for all parties—Plaintiffs as well as Defendants—as to the scope of permissible discovery (including any Weil testimony) going forward regarding WBA's communications with its counsel about the FTC review process.  While Plaintiffs had previously served a limited subpoena on Weil (in response to which Weil produced exactly what Plaintiffs requested, Weil's communications with the FTC), Plaintiffs never sought any additional documents from Weil, until now.  And, despite negotiating the number of depositions with Defendants, and despite being aware that Weil could testify and was identified on Defendants' Rule 26(a)(1) disclosures at the action's outset, Plaintiffs never included Weil among the witnesses it intended to depose, let alone mention that it was contemplating serving a subpoena upon the firm seeking testimony.

As an obviously last-minute thought, Plaintiffs just issued a second Subpoena to Weil, over 12 months after the first.  It is staggeringly broad and calls squarely for internal documents and information that Weil never communicated to WBA.  This information is wholly irrelevant

because it could not have formed the basis for any opinions expressed by the Defendants and was wholly unknown to the speakers of the challenged statements.  Moreover, for the same reasons, the vast majority of the requested documents would be privileged internal law firm work product. *See* Part I.A, *infra*. Indeed, the Subpoena should be quashed on these grounds alone.  In addition, however, the burden of responding to the Subpoena, as written, would be immense, requiring the review of tens of thousands of emails, hard copy materials, and other electronic documents generated over the course of Weil's 20-month representation of WBA in connection with the FTC's review of a multi-billion dollar transaction.  Weil estimates that it will take at least four to five months to complete the processing, review and production of responsive materials at extraordinary cost.   What is more, because the Subpoena targets counsel's internal communications and work product not shared with WBA, and therefore is not covered by the scope of the Court ordered privilege waiver, it subjects Weil to the pointless burden of logging as privileged the vast majority of the targeted documents.  This will easily take another one to two months to complete.  If it is not quashed, the subpoena thus will require a complete rewrite of the case schedule.  There is simply no way that all of this work can be completed before the current March 12, 2021 deadline for the completion of all fact discovery (much less before depositions commence), thus necessitating deferral of all subsequent deadlines.  *See* Part I.AB, *infra*.

Setting aside the irrelevance, the privilege, and the burden, this subpoena simply comes too late, at the close of document discovery, and on the eve of depositions.  Plaintiffs never alerted the Court or WBA in advance of issuing the subpoena to address these issues, let alone acknowledged the violence it does to the Court-ordered schedule.  Importantly, all of this comes without excuse.  Plaintiffs' recently-minted purported justification—that they were not aware until recently that Defendants too might rely on the very same communications between Weil and WBA

that were produced as a result of Plaintiffs' successful motion to compel—simply rings hollow. Defendants have always been free to use the same communications and documents Plaintiffs obtained in discovery.  This is a door Plaintiffs themselves opened and they too must live with the consequences of the limited privilege waiver they sought and obtained.  *See* Part I.B, *infra*.

All of this demonstrates that the Subpoena far exceeds the scope of what would be permitted even under Rule 26. But that standard does not govern. Rather, Federal Rule 45(d)(1) instructs that Plaintiffs, as the "party or attorney responsible for issuing and serving a subpoena" "*must* take reasonable steps to avoid imposing undue burden or expense." Fed. R. Civ. P. 45(d)(1). In addition, "[w]here, as here, discovery is sought from a non-party, the Court should be particularly sensitive to weighing the probative value of the information sought against the burden of production on the non-party." *Manolis v. Brecher*, 2013 WL 4044808, at *3 (S.D.N.Y. Aug. 9, 2013).

This is not a close call.  Plaintiffs' massively overbroad request that Weil review and log hundreds of thousands of pages of irrelevant, privileged documents should be quashed.  To the extent that this Court does enforce the Subpoena in any respect, it should condition that production upon an award to Weil of its attorneys' fees and costs for undertaking that pointless exercise, as required under Rule 45.  *See* Part II, *infra*.

## **FACTUAL BACKGROUND**

### A.    **The Underlying Action**

On November 2, 2018, Plaintiffs commenced the underlying action in the U.S. District Court for the Middle District of Pennsylvania, individually and directly on behalf of all purchasers of RAD common stock between October 20, 2016 and June 28, 2017 naming as defendants WBA,

as well as WBA's CEO, Stefano Pessina, and CFO, George Fairweather. Ex.[2] 1 ¶¶ 2, 12-14.  The Complaint alleges that various opinions expressed by the individual Defendants concerning the status of the FTC's antitrust review of WBA's proposed transaction with RAD violated Section 10(b) of the Securities Exchange Act of 1934.  Specifically, Plaintiffs allege that the individual Defendants "made false and misleading statements: (i) downplaying or disputing contrary reports from journalists signaling regulatory turbulence; and (ii) representing that inside knowledge of the FTC gave confidence that the deal would close." Ex. 1 ¶ 4.  As was publicly known, Weil served as outside antitrust counsel to WBA in connection with the FTC's review of the proposed transaction.  *See* Ex. 2 (RAD March 3, 2017 Proxy).

On January 8, 2019, Defendants moved to dismiss the Complaint arguing, among other things, that when WBA executives "expressed confidence in the deal, and disputed negative news reports, they did so because they believed—based on what they knew—that regulatory approval was obtainable and the news reports were inaccurate. When feedback from the FTC warranted changes to the transaction, Walgreens and Rite Aid made those changes and updated investors." Ex. 3 at 3.  Thus, from the very outset of the case, Plaintiffs were aware that Defendants were defending the case on grounds that their statements were consistent with the information about the FTC review process they possessed at the time—information which necessarily included communications with their FTC counsel, Weil.  On April 15, 2019, the Court denied Defendants' motion to dismiss, finding that Plaintiffs had adequately pled factual allegations supporting their Section 10(b) claims and the case should proceed to discovery.  Defendants answered on April 29, 2019.  In addition to denying any and all liability, in their Fifth Affirmative Defense, Defendants

---

[2] References to "Ex. __" are to the exhibits attached to the accompanying Declaration of Caroline Hickey Zalka, Esq., dated December 10, 2020.

stated that "the alleged misstatements or omissions made or caused to be made by the Defendants were based in good faith and in reasonable reliance upon the work, opinions, information, representations, and advice of others upon whom they were entitled to rely." Ex. 4 at 52.

**B.      Document Discovery**

Discovery in the underlying action began 18 months ago.  It has been overwhelmingly burdensome and expensive, even by the standards of large securities class actions.

On May 3, 2019, Plaintiffs served 48 separate requests for documents, seeking, among other materials, all documents "concerning the [FTC] regulatory review process."  Ex. 5 at 12. Defendants agreed to produce documents responsive to each of the 48 requests from the files of 13 different custodians spanning the period October 1, 2015 through September 18, 2017.  Zalka Decl. ¶ 4.  In total, Defendants produced 371,890 pages.  *Id.* at ¶ 5.[3]

In May and early June 2019, Plaintiffs also served subpoenas on six third parties: RAD; Citigroup Global Markets Inc.; Merrill Lynch, Pierce, Fenner & Smith Incorporated; UBS Securities LLC; Finsbury LLC; and Morrow Sodali LLC. Each of these six subpoenas sought, among other things, "all" documents and communications concerning "the FTC review" of the proposed transaction.  *Id.* at ¶ 6.  Collectively, third-parties have produced an additional 135,928 pages of responsive documents to Plaintiffs.  *Id.* at ¶ 8.

**C.      The First Weil Subpoena**

Plaintiffs have always known of Weil's role as antitrust counsel to WBA in connection with the FTC review process.

---

[3] On April 22, 2020, Plaintiffs served their Second Request for Production of Documents to WBA, which included one new document request with multiple sub-parts. Defendants produced documents responsive to that request.

The March 3, 2017 RAD Proxy for the transaction identifies Weil as WBA's antitrust counsel and recites in considerable detail the firm's numerous interactions with the FTC. The Background of the Transaction section contains 17 mentions of Weil in the context of the regulatory review process, including frequent meetings and communications with the government. *See, e.g.*, Ex. 2 at 49-65. Plaintiffs cite the March 2017 Proxy throughout their Complaint filed in November 2018. Ex. 1 at ¶¶ 30, 46, 63(a), 68, 69, 80.

In addition, in their Rule 26(a)(1) Disclosures served on May 13, 2019, Defendants identified Weil as "antitrust counsel to Walgreens Boots Alliance in connection with the Proposed Merger" and as a third party who "may . . . have discoverable information regarding the FTC's review of the Proposed Merger and related documents and communications that Defendants may use to support their defenses in this action." Ex. 6 at 6.

On November 21, 2019, Plaintiffs issued a subpoena to Weil requesting: (a) "[a]ll emails, including all attachments, between Weil and the FTC;" and (b) "all investigational hearing transcripts (including the exhibits) for the investigational hearings by the FTC." Ex. 7. Plaintiffs did not request any other documents from Weil concerning the FTC review, let alone the firm's communications with WBA or internal communications between the lawyers working on the deal. Indeed, unlike its subpoenas to other third parties, Plaintiffs did not include a demand for all of Weil's documents concerning the FTC review. Weil complied fully with the subpoena and, on December 13, 2019, produced nearly 15,000 pages of documents including its email communications with the FTC. Zalka Decl. ¶ 10.

A year has now passed since Weil completed its production of documents in response to Plaintiffs' first subpoena. During that period, Plaintiffs did not request a single additional document from Weil or request the deposition of a single Weil representative.[4]

### D.    Plaintiffs' Motion to Compel Defendants' Communications with Weil

In their initial document production to Plaintiffs, completed in December 2019, Defendants withheld on attorney-client privilege grounds documents reflecting their communications with Weil concerning the FTC review process. In December 2019, however, Plaintiffs moved to compel the Defendants (and only the Defendants) to produce these documents, contending that they could not prosecute their claims without them.  Citing the arguments at the motion to dismiss briefing, Plaintiffs contended that Defendants had waived the attorney-client privilege by "affirmatively put[ting] the information they *received from attorneys* regarding the FTC review at issue in this case."  Ex. 8 at 18 (emphasis added).  Arguing that "Walgreens' executives 'inside information' about the FTC review goes to the core of the merits in this action," Plaintiffs sought, among other things, all "documents or communications providing an update or report on the status of the FTC review process or discussions with the FTC, whether or not drafted or received by an attorney." Ex. 8 at 16.  Although Plaintiffs recognized that WBA's counsel "acted as the conduit" for this "inside information" about the status of FTC merger review," Plaintiffs did not seek any further discovery from Weil at that time, indeed, at any time before issuing the second Subpoena in late November 2020.  Ex. 8 at 9.

Plaintiffs' motion thus was directed at obtaining the documents they apparently believed they needed to rebut Defendants' position, apparent from the time of the motion to dismiss, that

---

[4] Weil produced one additional FTC investigational transcript (with exhibits) of a non-Weil employee on April 14, 2020.

the challenged statements were not actionable because they aligned with what the speakers knew about the FTC review process.  By making the motion, Plaintiffs themselves opened the door in the underlying litigation to discovery—and testimony—concerning the communications between Weil and WBA executives concerning the status of the FTC review process.

On June 11, 2020**,** Magistrate Judge Mehalchick granted Plaintiffs' motion to compel, finding a limited waiver of the attorney-client privilege as to Defendants' "documents and communications related to the regulatory approval and the status of the FTC review process." *Chabot v. Walgreens Boots All., Inc.*, 2020 WL 3410638, at *8 (M.D. Pa. June 11, 2020).  The Court reasoned that:

> Defendants have placed at issue what they knew about the FTC review process. They explicitly state that they made the allegedly fraudulent statements "because they believed – based on what they knew – that regulatory approval was obtainable and the news reports were inaccurate."

*Id.*  Accordingly, the Court ordered Defendants (and only Defendants) to produce and un-redact all documents "containing information or analysis regarding the status of the FTC review process," including communications between Weil and WBA.  *Id.*

Pursuant to the Court's order, WBA produced 27,610 documents, including the emails between Weil attorneys and WBA executives discussing: (a) Weil's communications with the FTC; (b) Weil's analysis and impressions concerning the FTC's feedback; and (c) Weil's recommendations and proposed next steps for addressing any regulatory concerns.  Zalka Decl. ¶ 14.   WBA completed this production on August 20, 2020, bringing the total number of pages of document discovery produced in response to Plaintiffs' various requests to approximately *535,000. Id*. at ¶ 15. The Court's order thus defined the scope of privilege applicable to WBA's communications with its counsel relating to the FTC review process going forward and the parties have been proceeding in accordance with its terms ever since.

### E.        The Parties Proceed to the Deposition Phase of the Case

Both sides recognized the impact that resolution of Plaintiffs' motion to compel would have on the case schedule.  Accordingly, while that motion was pending, the parties submitted a joint letter to the Court stating that the case schedule should be extended, acknowledging that the privilege decision "may impact the timing of depositions, given the parties' joint, general preference that each witness be deposed just once." Ex. 9 at 1.  The parties noted, however, that until they "have further clarity" on the scope of any supplemental document production, they "would prefer not to attempt to set a precise schedule to resume depositions, expert discovery, and further dispositive motions." Ex. 9 at 1-2.

Following the Court's ruling on Plaintiffs' motion to compel, the parties submitted a joint motion to extend the case schedule, which provided for depositions to commence on November 16, 2020 and fact discovery to close on March 12, 2021.  Ex. 10 at 2.  As is nearly universal practice in complex litigation, the parties reiterated their intent to close out document discovery before commencing depositions, stating in the first paragraph of their joint scheduling submission that they each "agree to use best efforts to address document discovery disputes promptly in advance of depositions, including with respect to party discovery and third party discovery" and further that they would "meet-and-confer in good faith concerning the scheduling of individual depositions with the goal that witnesses are only deposed once." Ex. 10 at 1.  The Court so-ordered the parties' proposed schedule on September 24, 2020.  Ex. 11.

In addition, on October 29, 2020, Defendants responded to Plaintiffs' Second Set of Interrogatories to Stefano Pessina and George Fairweather, which sought information concerning, *inter alia*, whether the individual Defendants were asserting an advice of counsel defense.  As stated in the cover note accompanying their responses, that as a result of the limited waiver the

Plaintiffs themselves demanded and obtained, Defendants intended to "use information received from counsel regarding the FTC review process, together with other evidence, to show that they honestly believed, and had a reasonable basis for, each of the statements they made that are alleged to be false or misleading in this case, and that each such statement fairly aligned with the information they possessed at that time.  Ex. 12 at 1.  This broke no new ground and only stated the obvious:  Defendants, like Plaintiffs, were now free to use attorney-client communications that fell within the scope of the Court's ruling on Plaintiffs' motion to compel.

Subsequently, the parties resolved the outstanding document issues and reached agreement on the scope and parameters for the deposition phase of the case.  On October 14, 2020, Plaintiffs provided a list of 19 persons and entities they sought to depose, requesting that Defendants stipulate that they could exceed the presumptive 10-deposition limit contained in Fed. R. Civ. P. 30(a)(2)(i).  Zalka Decl. ¶ 18.  Although they included several third parties, Plaintiffs notably did not include Weil on their list of proposed deponents.  The parties met and conferred and, on November 12, 2020, stipulated to a total of 16 fact witnesses.  In light of the current pandemic, the parties negotiated a remote deposition protocol that would govern the conduct of those depositions. *Id.* at ¶ 19.  Prior to service of the subpoena, WBA was in the process of identifying dates for WBA witnesses to be deposed.  *Id.* at ¶ 20.

Not once in this entire process, including numerous emails and meet and confer conferences, did Plaintiffs ever even hint that they intended to send a new subpoena to Weil that would extend document production by several months and demand the testimony of Weil attorneys on multiple topics.  *Id.* at ¶ 21.

### F.       The Second Weil Subpoena

On a Friday evening, November 20, 2020, without warning or a courtesy call, Plaintiffs'

counsel emailed WBA's counsel a copy of the Subpoena.[5]  *Id.* at ¶ 23.  The scope of the Subpoena

is staggeringly broad and, by its terms, calls overwhelmingly for privileged communications: "[a]ll

documents" concerning "the FTC review" of the proposed WBA/RAD transaction from each of

the three primary Weil attorneys who worked on the matter that were "drafted by, received by,

possessed by, or sent from" each of them over a 20 month period (October 1, 2015 through June

29, 2017).  Ex. 13 at 8, 9.  Each of the requests further provides that it:

> includes, but is not limited to, documents concerning the risks of the Proposed
> Transactions failing to pass regulatory review; the likelihood of the completion of
> the Proposed Transactions (whether at all or by any particular date); meetings or
> discussions with the FTC; the Statements concerning the FTC Review; advice to
> Walgreens concerning the FTC review; or discussions with third parties or their
> counsel regarding the FTC review.

*Id.*  While the Subpoena instructs that Weil need not produce duplicates of Weil communications

previously produced by WBA, it does not carve-out (and thereby targets) purely internal Weil

communications.  *Id.* at 3.  In addition, the Subpoena adds yet another category of documents, one

concerning matters from long after the underlying FTC review ended, seeking all of Weil's

communications with the FTC since January 1, 2020, concerning the litigation or Mike Moiseyev,

a former FTC attorney who joined Weil in April of this year.

The scope of document review and production called for by the Subpoena would require

Weil to review an overwhelming amount of electronic records and data in its possession, currently

estimated to total some 60,000 e-mails alone, plus tens of thousands of additional electronic and

hard copy documents.  Zalka Decl. ¶ 25.  All documents, electronic and paper, would then have to

---

[5] Weil subsequently accepted service of the Subpoena on November 23, 2020.

be reviewed by Weil attorneys to determine whether the documents are responsive to the Subpoena's requests, and if responsive, whether each document is wholly or partially shielded from discovery by any privilege, protection, or similar limit on discovery. *Id.* at ¶ 26. Weil estimates that collection, review and production of these materials would take at least four to five months, driven in large part by the Subpoena's explicit demand for large swathes of inherently privileged communications. *Id.* at ¶ 27.

What is more, the Subpoena demands that Weil produce a privilege log detailing the following information for each and every privileged document: "date, sender, recipient, persons to whom copies were furnished together with their job titles, subject matter, basis on which privilege or other objection is claimed and the number of each Request to which such document responds." Ex. 13 at 3. Since the vast majority of responsive documents would be privileged, they would all have to be logged. Internal Weil files that were never shared with the client fall outside the scope of the limited Court ordered waiver, which concerns communications between Weil and WBA with regard to the status of the FTC process. What is more, as these documents by definition were never communicated to the client, they are irrelevant to the issue at hand—they could not have any bearing on the reasonably held opinions of the Defendants. Generating this log of privileged documents irrelevant to Plaintiffs' claims in the underlying action would take numerous attorneys at least one to two months to prepare once the production is complete. Zalka Decl. ¶ 29. Weil, a non-party to the action, cannot comply with the significantly overbroad scope of the Subpoena by the current March 12, 2021 deadline for fact discovery, much less complete production before depositions commence.

The Subpoena thus disrupts completely the orderly progression of the case. Indeed, before the Subpoena was served, document discovery had been effectively completed save for various

typical clean-up matters, none of which should require deferring depositions. *Id.* at ¶¶ 18-21. The Court-ordered schedule provided for document production to end *before* depositions start, to avoid calling a witness for deposition more than once. Given the parties' commitment to resolving document issues before commencing depositions, and to avoid multiple depositions of the same witness, compliance with the Subpoena means that all depositions would have to be stayed until mid-2021, thus requiring further adjustments to the schedule and thereby yet again deferring ultimate resolution of the merits. In short, the Subpoena promises to sabotage the existing case schedule for no valid reason.

Furthermore, although the parties have already agreed to the depositions that Plaintiffs can take consistent with Rule 30, the Subpoena seeks the deposition of a Weil representative to testify concerning 5 different topics. Ex. 13 at 10-11. Plaintiffs have not requested leave from the Court to proceed with the deposition, let alone asked Defendants to stipulate to this additional examination.

Plaintiffs knew all this would flow from their subpoena, but nevertheless served it without acknowledging its impact on the schedule, without contacting WBA to discuss the timing of Weil's compliance, without seeking to reduce the burden on Weil, and without application to the Court for an extension (which would have required them to show good cause).

## ARGUMENT

The Subpoena is a case study in what Rule 45 prohibits. On timely motion, the "court for the district where compliance is required *must* quash or modify a subpoena that . . . requires disclosure of privileged or other protected matter" or "subjects a person to undue burden." Fed. R. Civ. P. 45(d)(3)(iii)-(iv) (emphasis added). Evaluating undue burden "requires the court to weigh the burden to the subpoenaed party against the value of the information to the serving party."

*Cohen v. City of New York*, 2010 WL 1837782, at \*3 (S.D.N.Y. May 6, 2010). Factors that courts consider include "relevance, the need of the party for the documents, the breadth of the document request, the time period covered by it, the particularity with which the documents are described and the burden imposed." *Concord Boat Corp. v. Brunswick Corp.*, 169 F.R.D. 44, 49 (S.D.N.Y. 1996). In making this assessment, "[s]pecial weight [should be given] to the burden on non-parties of producing documents to parties involved in litigation." *Cohen*, 2010 WL 1837782, at \*3.

This rule flows from the requirement that the "party or attorney responsible for issuing and serving a subpoena *must* take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena." Fed. R. Civ. P. 45(d)(1) (emphasis added). The Court's obligation in this regard is particularly important when the discovery is sought from a law firm, critically where, as here, the subpoena is not appropriately crafted to avoid piercing the attorney-client privilege and attorney work product protections. *See In re Friedman*, 350 F.3d 65, 70 (2d Cir. 2003) ("Courts have been especially concerned about the burdens imposed on the adversary process when lawyers themselves have been the subject of discovery requests.").

## I. THE COURT SHOULD QUASH THE SUBPOENA

### A. Plaintiffs Have No Need for the Documents Called for by the Subpoena

As a threshold matter, Plaintiffs must demonstrate that "the information sought is relevant and material to the allegations and claims at issue in the proceedings." *Giuffre v. Maxwell*, 221 F. Supp. 3d 472, 475 (S.D.N.Y. 2016) (citation omitted). "Subpoenas issued under Rule 45 are subject to the relevance requirement of Rule 26(b)(1)," *Homeward Residential, Inc. v. Sand Canyon Corp.*, 2017 WL 4676806, at \*18 (S.D.N.Y. Oct. 17, 2017), which permits the discovery of only those "nonprivileged matter[s] . . . relevant to any party's claim or defense and proportional

to the needs of the case." Fed. R. Civ. P. 26(b)(1). Plaintiffs cannot remotely satisfy this showing, let alone demonstrate that they have any need for the documents demanded by the Subpoena.

Plaintiffs challenge statements made by WBA executives reflecting their assessment of the FTC review process. WBA and its executives are defending themselves, in part, on the grounds that each speaker genuinely believed the statements, and further that their opinions fairly aligned with the information they possessed at the time. *See Omnicare, Inc. v. Laborers Dist. Council Constr. Indus. Pension Fund*, 575 U.S. 175, 184, 194 (2015) (plaintiff must show that the speaker did not "hold[] the stated belief" or that she lacked a "basis for offering" the opinion); *City of Edinburg Council v. Pfizer, Inc.*, 754 F.3d 159, 170 (3d Cir. 2014) ("Opinions are only actionable . . . if they are not honestly believed and lack a reasonable basis"). Plaintiffs have been aware that WBA and its executives have been defending this case on these grounds since at least the motion to dismiss. Information that the speaker did not possess at the time is irrelevant to this inquiry as it cannot possibly bear on his subjective belief, let alone his state of mind more generally.

Accordingly, Plaintiffs do not need internal Weil communications, never shared with the client, to prove their claims because such materials did not (and could not) inform Defendants' views of the FTC process. The only relevant law firm communications are those actually exchanged between Weil and WBA executives as those communications *could* potentially have influenced the speakers' state of mind and beliefs as to the likelihood that the FTC would approve the transaction. This is a well-established, bright-line distinction: when the defendant's state of mind is at issue, work product of counsel that was not shared with its client is irrelevant. *See Rhone-Poulenc Rorer Inc. v. Home Indem. Co.*, 32 F.3d 851, 866 (3d Cir. 1994) (when a party puts its "state of mind . . . in issue, papers reflecting the work product of counsel that were not shared with or communicated to the clients are not relevant" as those documents "cannot affect the

client's state of mind."); *see also Elcommerce.com, Inc. v. SAP AG*, 2010 WL 3421101, at *6 (E.D. Pa. Aug. 27, 2010) (work product "not communicated to [SAP's] attorneys . . . have no bearing on SAP's state of mind and are not discoverable").

The actually relevant communications—those between WBA and Weil—are already part of the 500,000-plus page discovery record in the underlying litigation.  Plaintiffs already have received: (i) from Weil, in response to the first subpoena, the pertinent communications between Weil and the FTC, providing them a real time record of the review process; (ii) from WBA, further to the Court's June 11, 2020 order on Plaintiffs' motion to compel, Weil's email communications with WBA concerning, among other topics, the law firm's summaries of its meetings and communications with the FTC, its analysis and impressions of feedback provided by the FTC, its proposed recommendations for next steps, and its views as to the status of the FTC review; and (iii) from other third parties, pertinent discussions involving Weil concerning the FTC review.

Now, Plaintiffs seek to obtain documents from Weil's internal files that were never shared with the client, such as communications between Weil lawyers who worked on the deal, discussions with various third parties (also never sent to the client), internal memoranda and research, drafts of various papers and other typical materials that lawyers generate in a representation of this nature (again, never sent to the client).  *None of these materials can or will be used by Defendants in their defense of the case*.  Similarly, the demand for documents reflecting communications between Weil and the FTC concerning Mr**.** Moiseyev, after January 1, 2020, over two years after the relevant events, cannot possibly bear on any issue to be litigated in the case and would certainly not be employed by WBA or its executives to demonstrate that they had a reasonable basis for making the challenged statements years earlier.

Moreover, the vast majority of the requested information is almost certain to be largely privileged on its face, and thus immune from discovery.  What is more, they fall well outside the scope of waiver set forth in the Court's order.  Attorneys' internal deliberations regarding litigation strategy are core opinion work product.  *See Sporck v. Peil*, 759 F.2d 312, 316 (3d Cir. 1985) ("Opinion work product includes such items as an attorney's legal strategy, his intended lines of proof, his evaluation of the strengths and weaknesses of his case, and the inferences he draws from interviews of witnesses.").  As the Third Circuit has held, "[s]uch material is accorded an almost absolute protection from discovery[.]"  *Id.*  Moreover, as provided in the cases discussed *supra* p. 16, those documents remain protected when a party places their knowledge at issue for the simple reason that they have no bearing on what the client knew.  Indeed, under New York law, many of these documents do not even belong to the client, which generally is not afforded access to all of a law firm's internal materials.  *See generally Sage Realty Corp. v. Proskauer Rose Goetz & Mendelson, LLP,* 91 N.Y.2d 30, 37 (N.Y. 1997) (client "nonaccess would be permissible as to firm documents intended for internal law office review and use" because of the "need for lawyers to be able to set down their thoughts privately in order to assure effective and appropriate representation warrants keeping such documents secret from the client involved").

Finally, and perhaps most telling, Plaintiffs' sudden and belated "need" for these documents to support their case is directly belied by the fact that they delayed so long in requesting them. Plaintiffs waited to launch this Subpoena until after the parties had effectively completed an extensive 18-month document discovery process and depositions were set to commence.  Plaintiffs have no valid excuse for not serving the Subpoena long before November 23, 2020, at a time when doing so would not upend the case schedule, and at the latest, when they served their first subpoena on Weil. Indeed, their actions suggest that they have simply reconsidered their strategy of ignoring

the reality—apparent from the very inception of the action—that Weil could testify at trial regarding the FTC merger review, and consistent with the Court's privilege order, can discuss Weil's communications with WBA concerning the FTC review. But Plaintiffs' newly-minted view does not justify in any way an overbroad and unduly burdensome subpoena that calls for thousands of documents that have nothing to do with their claims.

Plaintiffs' contention that they only recognized the necessity for the Subpoena upon receipt of the cover note that accompanied Defendants' responses to Plaintiffs' Second Set of Interrogatories is pure pretext. *See* Ex. 12. The cover note broke no new substantive ground and merely reflected the obvious fact that information produced as a result of Plaintiffs' own motion to compel would also be used by the Defendants in demonstrating that they honestly believed the opinions they expressed about the status of the FTC review process and further that those statements fairly aligned with the information they possessed. Indeed, Plaintiffs have known since the outset that Defendants are defending the case based on their knowledge of the FTC review process—knowledge that included information received from Weil—and indeed filed a motion to compel last December seeking WBA's communications with its lawyers about the FTC review process.

Moreover, neither the interrogatory responses nor the cover note shed any new light on Weil's role. Plaintiffs have known all along—from both the Proxy that they cited throughout their complaint and Defendants' Rule 26(a)(1) disclosures—that Weil served as the conduit for WBA's knowledge of the FTC process; indeed, as they acknowledged in their motion to compel, Weil "served as the Company's principal interface with FTC staff" (Ex. 8 at 2). Indeed, the entire premise of Plaintiffs' motion to compel was that information *conveyed by Weil to WBA* was critical to the parties' claims and defenses. Plaintiffs could have sought additional discovery from Weil at

the time they filed the motion to compel, or thereafter at a point when they could have done so without disrupting the case schedule.

The Court should not reward Plaintiffs' dilatory tactics. *See Saint-Jean v. Emigrant Mortg. Co.*, 2015 WL 13735434, at *5 (E.D.N.Y. Oct. 7, 2015) (awarding sanctions for subpoenas, noting that the party "and its counsel could have sought such information earlier in the discovery process, rather than one week before the close of discovery"). Plaintiffs' conduct in this regard is all the more egregious given their joint commitment when the parties submitted their proposed scheduling order to Judge Jones in September 2020 that they would "use best efforts to address document discovery disputes promptly in advance of depositions, including with respect to party discovery and third party discovery." Ex. 10.

### B. The Subpoena Needlessly Subjects a Non-Party to Undue Burden

"A subpoena that pursues material with little apparent or likely relevance to the subject matter is likely to be quashed as unreasonable even where the burden of compliance would not be onerous." *Morelli v. Alters*, 2020 WL 6508858, at *4 (S.D.N.Y. Nov. 5, 2020) (citation omitted). But where there is no need for a subpoena to begin with, "*everything* done in response to it constitutes an 'undue burden or expense' within the meaning of Rule 45(d)(1)." *Saint-Jean*, 2015 WL 13735434, at *5 (emphasis added). Here, the burden associated with responding to Plaintiffs' blunderbuss Subpoena self-evidently eclipses the nominal value that the documents may have in the action (even if there were any).

The burden associated with responding to the Subpoena would be immense, both in terms of time and expense. The Subpoena aimlessly demands all documents regarding a 20-month review by the FTC of a complex transaction from the files of the three lead attorneys who represented WBA in that process, the vast majority of which are likely to be privileged.

Preliminary results using reasonable search terms show that the Subpoena hits upon over 60,000 emails alone.   Zalka Decl. ¶ 25.  All potentially responsive documents would then need to be carefully reviewed to determine "which portions were privileged," which would itself require "considerable time and divert considerable resources" given that the documents originate from within a law firm. *Saint-Jean*, 2015 WL 13735434, at *5.  This undeniably imposes a massive burden on non-party Weil.

        In addition, the Subpoena requires Weil to prepare an expensive and essentially pointless privilege log.  Plaintiffs demand internal law firm communications, the vast majority of which would be privileged. *So Weil would have to log these communications*.  Specifically, the Subpoena purports to require Weil to "furnish a list identifying *each* document for which the privilege or other objection is claimed" along with the "date, sender, recipient, persons to whom copies were furnished together with their job titles, subject matter, basis on which privilege or other objection is claimed and the number of each Request to which such document responds."  Ex. 13, at 3 (emphasis added).  Because the Subpoena primarily calls for privileged documents, Weil's privilege log would very likely comprise tens of thousands of entries, which would take a team of numerous attorneys at least one to two months to complete.  A subpoena that mandates such an undertaking is the antithesis of "taking reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena" under Fed. R. Civ. P. 45(d)(1). *See also In re Circle K Corp.*, 1996 WL 529399, at *8 (Bankr. S.D.N.Y. May 30, 1996) (Rule 45(d)(1) is designed to avoid "saddl[ing] a non-party to the litigation with the burden and expense of preparing a privilege log to meet an overly broad document demand"), *aff'd* 1997 WL 31197 (S.D.N.Y. Jan. 28, 1997).

        In contrast, compliance with the Subpoena will produce few (if any) documents that could legitimately be used in the Action, for all the reasons discussed in Part I.A. The primary result is

therefore a futile document review and a ridiculous privilege log.  Given that the Subpoena serves no purpose in connection with the material issues to be addressed, it represents the epitome of abusive litigation tactics and should be quashed. *See Citizens Union v. Attorney Gen. of N.Y.*, 269 F. Supp. 3d 124, 148–49 (S.D.N.Y. 2017) (quashing subpoena where "discovery is of no real probative value" but the process of "locating, collecting, logging and producing the documents . . . amounts to an undue burden").  *Morelli*, 2020 WL 6508858, at *6 ("substantially overbroad" subpoenas requiring a "classic 'fishing expedition'" apparently issued "for the purpose of harassment" quashed as "to the extent they seek any relevant information, are disproportionate to the needs of the case").

## II.   THE COURT SHOULD AWARD REASONABLE COSTS AND FEES

Rule 45(d)(1) provides the Court with authority to award costs and fees against parties who issue overbroad and unnecessary subpoenas.  This remedy "do[es] not require a showing that the party . . . acted in bad faith." *Saint-Jean*, 2015 WL 13735434, at *3 n.4.  Rather, it is appropriate whenever "a party or attorney . . . fails to comply" with the obligation to "take reasonable steps to avoid imposing undue burden or expense" on a third-party. Fed. R. Civ. P. 45(d)(1).  The Court should require Plaintiffs to bear the costs and fees associated with this Motion because Plaintiffs have refused to reasonably limit or withdraw the Subpoena.

Moreover, to the extent the Court does require Weil to produce any documents called for by the Subpoena, in whole or in part, it should condition that production on requiring Plaintiffs to bear the costs incurred by Weil in connection with complying with the Subpoena, given its scope and demand for privileged information.  *See In re Loeb & Loeb*, 2019 WL 2428704, at *5 (S.D.N.Y. June 11, 2019); *In re Law Firms of McCourts & McGrigor Donald*, 2001 WL 345233, at *3 (S.D.N.Y. Apr. 9, 2001) (subpoenaed parties "will be required to produce the requested

documents only after receiving in advance the reasonably estimated costs of production, including the attorney's fees to be incurred by respondents in reviewing and selecting the documents to be produced"); *see also Saint-Jean*, 2015 WL 13735434, at *7 (awarding fees where "far-reaching Subpoenas pose serious concerns about privileged and confidential materials, and responding to them required plaintiffs' counsel to expend considerable resources in a limited amount of time").

## **CONCLUSION**

For the foregoing reasons, the Court should quash the Subpoena issued to Weil and award the costs and fees incurred in preparing and submitting this motion.  To the extent the Court declines to quash the Subpoena, the Court should require Plaintiffs' to bear the costs incurred in connection with complying with the Subpoena.

Dated: December 10, 2020
     New York, New York

        *s/ Jonathan D. Polkes*
Jonathan D. Polkes
Caroline Hickey Zalka
Seth Goodchild
Justin D. D'Aloia
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, NY 10153
(212) 310-8000
(212) 310-8007 (fax)
jonathan.polkes@weil.com
caroline.zalka@weil.com
seth.goodchild@weil.com
justin.daloia@weil.com

*Attorneys for Petitioner Weil, Gotshal & Manges LLP*